Judge Tucker.
Joseph Jones brought a bill against 7 r -T . . . , ... Robert Carter, ot Romm, stating, among other things, that *185 Hharles Carter, of Ludlow, claiming a right to part of a tract of land in Loudon, containing by patent 11,375 acres, brought a writ of right for the same, which was compromised at the trial; in consequence of which, Robert Carter, in the month of August, 1789, executed a conveyance to *186 Charles Carter in fee-simple, for a full and perfect moiety of the land contained in the said patent. That on the 18th of December, 1794', Charles Carter conveyed to the plaintiff in fee-simple, for a valuable consideration, “ all that tract “ of land called Goose Creek Tract, situate and being in “ the county of Loudon, conveyed unto the said Charles “ Carter, by Robert Carter, by deed bearing date the 14th “ day of August, 1789, and was said to be a moiety of the <c tract granted to an ancestor of Robert Carter, in the year il 1727, and to contain 11,375 acres, and comprehending “ the lots and land, as laid down in a plat of land.or sur- “ vey by William Garland in 1755, numbered 15,” &c. That the whole of the first mentioned tract contains a greater quantity than was expressed in the patent. That, without a survey being again made, and upon the representation of Robert ■Carter, Charles took possession of the before-mentioned lots, upon the belief that they contained a moiety of the tract, which was agreed to be given on the compromise to him: whereas the plaintiff expressly charges, that the said lots do not by any means contain a moiety of the tract, nor even more than 4,871 acres, according to a late survey by one Thornley, thereto annexed and referred to. That the plaintiff hath applied to Robert Carter to consent to an equal division, according to the tenor of his agreement with Charles Carter, and the deed executed at the time of the compromise; but that he refuses to make up the deficiency of the moiety. He then interrogates the defendant, whether the intention of the compromise was not to give Charles Carter a full moiety1 of the land ? Whether the part he received be equal to a full moiety ? and whether the part so received was not understood between the parties, to be a full moiety? and prays that a fair and equal partition may be made, and that he, as a purchaser, may obtain the deficiency, and fqr general relief, &c.
Robert Carter answers, admitting the compromise, and his deed of the 14th of August, 1789, conveying to Charles *187 .fsne undivided moiety of the tract of land. lie then states ' . chat, soon after that conveyance, he authorized B. Washington to make a division thereof, with Charles Carter; ° . . that a division was agreed on between them, by writing under the seal of Charles Carter and B. Washington, a copy whereof is annexed and prayed to be taken as a part of the answer. That he is not able t a find the original, but doubts not he shall be able to prove the copy above referred to, to be a true one. He cannot at present exactly iix the date of the said agreement, but saith that it must have been on or before the 26 th of June, 1790, as the copy above referred to was enclosed in a letter from B. Washington, now in his possession, and hearing date on that day. That it will appear thereby, that the land was divided by a survey made by W. Garland, in 1755, laying it off into separate lots, which were numbered, and refers to a copy of that survey, distinguishing all the lots that fell to Charles Carter, That he never heard Charles Carter objected to the division after it was agreed on, or that he ever alleged that agreement ought not to bind him. He admits that Charles’s part did not contain so many acres as his part, but that it was supposed to contain better land. That he is well assured Charles could not be ignorant that his part contained less land than the defendant’s part, as the quantity of land in each was laid down in the survey; and that the quality of the land was his inducement to take the part assigned him. He submits to the Court, whether the plaintiff can have any colour of right against him, when it appears, from tire deed referred to in the bill from Charles Carter to the plaintiff, that the latter did not purchase an undivided moiety, or any interest in common with the defendant, but a separate and distinct tract of land, laid off by metes and bounds, which will be found on inspection to agree exactly with those by which the division between Charlea Carter and the defendant was made.
The deposition of John Tyler, the only witness in the cause, states, that he was called on in June, 1790, by *188 Charles Carter and B. Washington, to give them informa* tion respecting the value of the lots in the Goose Creek Tract, bold by Robert Carter, which they were then about dividing, and which he understood they were dividing by the lots held by the defendant’s tenants, that being the mode talked of when he left them. The next day he met with them both; that both told him they had made the division, and that the quantity fallen to Charles was something upwards of 5,500 acres. Being asked by the plaintiff what he thought the difference of value in the two tracts* he answered, that at the time of the division it was his opinion, that Robert Carter’s part was worth 500/. more than Charles’s, and. that it is still his opinion ; that Charles appeared to be satisfied, and expressed no disapprobation of .the division. Being asked how the lands allotted out to the tenants held out under Charles, he answers, that two lots held by himself fall short 58 1-4 acres of the quantity mentioned in his lease. The Chancellor dismissed the-bill.
A deed of bargain and sale from Charles Carter to Joseph Jones, dated December 18, 1794, among the exhibits, recites, that Charles Carter, on the 9th of October before, had contracted with Mr. Jones for the sale of his tract of land in the County of Loudon, at the price of three dollars per acre, and, in consideration thereof, had bargained and sold “ all that tract called the Goose Creek Tract f in the terms recited in the bill, as already noticed; comprehending the lots of land, as laid down in a survey by William Garland, made in the year 1755* numbered 15, &c. and the lot called the reserved land, binding on Goose Creek, &c. in the usual form of such conveyances.
The deed of partition, (referred to in the answer of Robert Carter,) which is without date, recites, that Charles Carter and Bushrocl Washington, appointed by Robert Carter to divide the Goose Creek tract of land, in the County of Loudon, on the part of the said Robert, have agreed, and do by these presents agree, that the said tract be di *189 vided as follows, viz. beginning, &c. reciting a number of courses and distances; and that these courses, including lots No. 15, &c. in all 5,552 1-2 acres, the part, parcel or dividend, included within those boundaries, it is agreed, by and between the parties, shall belong to Charles Carter; all the rest and residue of the said Goose Creek Tract, bounded by the line of the said Charles, from the letter A., &c. to the beginning, at A., it is agreed by and between the parties, shall belong to the said Robert Carter; reference being had to the said survey and plat of William Garland, the boundaries and division of the said land will more fully appear. This deed is sealed with the seal of Charles Carter, and with that of Bushrod Washington, attorney for Robert Carter; but there is neither date, nor any witness to the execution of it. This instrument is sufficiently recognised by Robert Carter in his answer, to give it effect, as his deed; but there is no proof of the execution of it by Charles Carter, any where in the record, that I can discover ; though, in the argument, I do not recollect that any objection was made to it on that ground. The bill does not notice it. Charles Carter’s deed to Mr. fanes creates a strong presumption, however, that it was executed by him; for the lots of land particularly designated as the property of Charles Carter, are numerically the same in both ; and the bill charges that Charles Carter took possession of them upon the belief that they contained a moiety of the Goose Creek Tract, of which he was to have an undivided moiety by virtue of the compromise. The execution ©r non-execution of this instrument, or deed, by Charles Carter, appeared to me at first to be indispensably necessary to be proved or admitted upon the record, in order to a just decision of the cause ; for though, by the common, law, parceners might make partition by agreement between, them, as well by parol without deed as by deed, yet joint-tenants could not; nor could tenants in common make a partition by parol, unless they executed the same in severalty by livery of seisin;(a) The bare entry of Charles *190 Carter into the lots in the bill mentioned, though upon the representation of Robert Carter, as charged in the bill, and under a belief that they contained a moiety of the tract, is not evidence of such a partition, as both the common law and our statute law require. And without such evidence, I was inclined to think the cause was not ripe for a decision ; but my scruples have been in great measure removed by the opinion of the other members of the Court.
I shall now consider the case upon the ground, that the deed of partition was duly executed by Charles Carter, of the one part, and by Bushrod Washington as the agent and attorney of Robert Carter, on the other, (a)
In that case, it would operate either as a légal conveyance of the lands, set apart for the parties respectively by metes and bounds, as in the deed mentioned; or as an executory agreement to make the partition agreeably to those metes and bounds.
By the common law, if parceners make partition between them of lands in fee-simple, by agreement, either by deed or by parol without deed, being all at the time of making the partition, at 'full age and unmarried, and of sane memory, it is good and firm for ever, although the values be unequal. (b) And if two parceners of lands in fee marry, and their husbands make partition between them, if the part of the one be less in value than the part of the other, during the lives of their husbands, the partition shall stand in force. But, although it shall stand during the lives of the husbands, yet, after the death of the husband, she who hath the lesser part may enter into her sister’s part, and defeat the partition. But though the partition is unequal, yet it is not void, but voidable; for if, after the decease of the husband, the wife entereth into the unequal part, and agreeth thereunto, this shall bind her.(c) And the law is the same where one of the coparceners happens to be an infant at the time of the partition made ;(d) but this is only where the partition is unequal, and the infant has the lesser part: and even then it is not void, but avoidable by *191 his entry; for if he take the whole profits of the unequal part after his full age, the partition is made good for ever .(a) I3ut though parceners might by the common law make partition between them, without deed, yet joint-tenants could not; nor could tenants in common make partition by parol, unless they executed the same in severalty by livery; and this appears to be the only distinction between partitions made by parceners, or by joint-tenants, or tenants in common. (b)
According to these authorities, if this deed be regarded as operating as a conveyance by the common law, the parties thereto being at the time of full age, and no fraud or imposition on either side; and Charles Carter having moreover entered and taken possession of the part allotted to him, the partition, though it should be unequal, is nevertheless binding and valid for ever. By recurrence to dates, it would appear, that his possession thus acquired must have continued upwards of four years before Mr. Jones’s purchase. Consequently, at the time of selling, Charles Carter, if the deed shall operate as a legal conveyance, was concluded thereby, and by his entry and possession of the lands therein mentioned, from claiming any other part of the original tract.
But it is contended, that this deed cannot operate as a legal conveyance, there being no words in it sufficient to pass an estate from one to another, but containing merely words of covenant and of future operation. But there are cases where a covenant may operate as a release,(c) and I think this is one of them ; each party releasing all his right to the part of the land assigned to the other. But suppose it were otherwise, what then must be its effect as an executory agreement in a Court of Equity ?
The rule that equity follows the law appears to me to be peculiarly applicable to the present case. We see that unequal partitions are not void, but voidable only, under certain circumstances of inequality, where the party, to whom the lesser part may he allotted, is under any dis« *192 bility at the time of the partition being made. We have seen also, that, although voidable in such cases, the subsequent entry and agreement of the party having the lesser part, after the removal of his disability, renders that valid and good for ever which was voidable before. And that, where all the parties are of full age, and under no disability, the partition, though unequal, is nevertheless binding upon them for ever. If the object of the present bill were to carry this agreement into effect, the Court, as a Court of Equity, would decree a conveyance, in conformity to the agreement itself, and not otherwise, without regard to the inequality, unless it were produced by fraud or surprise; because the parties, by their solemn deed, have expressed their intention to make a partition in such a manner as the law would approve, if it were made by a legal conveyance. The Court would reject any defence made upon the ground of a mistake either in quantity or value, where both parties were equally ignorant, or acted with full knowledge of the nature of the evidence before them; as in the present instance, where both parties refer to a plat and survey made in 1755; of any errors in which both were equally ignorant. Nor is there any proof, that I see, that it is erroneous, except in one instance, of no great importance. If, then, equity would have decreed a specific performance if it had been asked, will it now annul the agreement between the parties, because of this supposed inequality ? I conceive not. Equity will not interpose, if the fact about which a mistake happens was from its nature doubtful, or at the time of the agreement equally unknown to both parties ; as, where a contract was for a piece of ground, which was to be enclosed for 20/. and, upon a bill for a specific performance, the defence was, that it was worth 200/. although the contract was to be performed, in futuro, yet neither party knowing the value, a performance was decreed.(a) That appears to me a much stronger case than the present, the mistake charged being tenfold the amount of the consideration agreed to be *193 paid; whereas the inequality, in the present case, is probably very far below that, if any really exists.
Uy opinion, upon the whole, is, that the decree be affirmed.
Judge Ruarx.
The tenor of the deed from Charles Carter to 'Janes, e\ ideuíly impo¡ í;; a purchase by the latter of a ‘.¡pacific asci'i taiued tract of land, and net a moiety of ft Larger tract. It recites that Charles Carter had contracted for the stde of “ his tract of land n called Goose Creek, void conveys “ all that tract of land” called Goose Creek Tract, ike. whereas, if an undivided moiety of a larger tract had been contemplated, he would have conveyed all that his undivided moiety of the said tract. The deed, it is true, annexes the words “ conveyed by Robert Carter to “ Charles Carter, by deed of 14th August, 1789;” and if It had stopped there, there would have been greater reason to construe it a conveyance of an undivided moiety. But it proceeds thus, “ and was said to be a moiety” of the tract granted in 1727. This last expression evidently applies to a specific tract, which is said or supposed to contain a moiety of the tract granted in 1727. Such an expression is inconsistent with a conveyance of a full and undivided moiety. In that case the conveyance would have been of a full and undivided moiety merely. With respect to the criticism on the term “ comprehending,” by the appellants’ counsel, it would have been correct if a greater interest had been in the first place clearly shewn to have been conveyed. In that case the specification might he construed to be commensurate with the basis on which it was intended to he bottomed. Such was the case in the instance of Tabb v. Archer;(a) buy without a pelillo principa, that construetion will not fit the case before us. This construction of Jones’s purchase is made more manifest by the reference in the deed to Garland’s survey, and to a specification of the lots thereof, assigned to Charles Carter, and by him sold to Jones, The outward lines of those lots specify as *194 completely the metes and bounds of the land conveyed by the deed, as if the deed had been silent as to those lots, and had described that line by mere course and distance only. It is further to be remarked, that the sense of both these parties (Jones and Charles Carter) is manifested, as to the construction of the contract in this particular, by Charles Carter's entry into the particular lots assigned to him, and now held by Jones, and by the actual survey of their agent Thornley. He did not survey the whole tract, but surveyed this as a specific tract of land by the metes and bounds resulting from the lots mentioned in the deed. That survey not being objected to in the Court below is to be read here, and to have as much effect here as there. It will not be pretended, however, I presume, that a deposition not objected to in the Court below, and containing inter alia, for example, mere hearsay testimony, will (by the mere omission to object to the deposition in the inferior Court) exalt that hearsay testimony into legal evidence. The omission to object in the Court below only amounts to an agreement that it shall be read in the appellate Court to avail quantum valere potest. The case just put of hearsay evidence seems analogous to the one before us. In the case of Johnson v. Brown,(a) the survey in question was authenticated by the surveyor’s deposition, and was made part thereof. But in the case of Lee v. Tapscott,(b). it was held, that & private survey is no evidence against those who were strangers to it. This is conclusive to shew that Thornley’s survey is not complete to bind Robert Carter, if it has no greater effect in this Court than in the Court below. But what does that survey prove, even as between Charles Carter and JonesP Only that Charles Carter’s dividend of land contains fewer acres than Garland’s survey purported. But does it further prove, that Robert Carter’s dividend does not also fall short in the same ratio ? Certainly not; for that dividend has not even yet been surveyed ; and, if it does fall short in the same ratio, no cause of action exists in Jones’s re *195 presenta tives, admitting them to stand precisely .in Charles Carter's shoes, and that Charles Carter was not barred on this subject by the division with Washington. Thornley's survey, therefore, however it may be between Charles Carter and Jones, and in relation to Charles Carter's dividend of land, does not affect Robert Carter, nor shew that he actually stands on more advantageous ground in respect of quantity than the present appellant. The natural presumption on the contrary is, that if Garland's survey does not hold out as to a part thereof, it will be equally deficient in relation to the whole tract. As, therefore, neither the whole tract, nor Robert Carter's particular dividend of land, has been surveyed, even by Thornley, the case of the appellants is incomplete to shew an injury, even in the view that they are now entitled to a moiety of the tract of 11,375 acres. That survey, if made, might, on the contrary, shew unequivocally, (by Robert Carter's dividend being more deficient,) that the present appellants have no cause of action against him, but, on the contrary, that they hold land which, on the pretension novo set up, the representatives of Robert Carter are entitled to recover. If, therefore, no inequality of partition is shewn to exist in the case before us, it is unnecessary to consider the question as upon the doctrines of the law which apply to unequal partitions ; though I doubt not the doctrines stated by the J udge who preceded me are correctly stated.
This view of the case is conclusive against the present appellants. But as (to admit the most) it is doubtful whether they, or the representatives of Charles Carter, are entitled to the subject of the present claim, (if any one is entitled,) those-representatives ought certainly to be parties before their interest in this particular can be affected. In that case they would have it in their power to exhibit the agreement of October, 1794, with Jones, which he did not think proper to do, and which therefore raises a presumption against him. As it is not, however, proper to hold out any inducements to those representatives to engage ‘n litigation for the land notv claimed, I will repeat, that, *196 from this case, as it now appears to us, I do not see that even they would have any title. Robert Carter conveyed to Charles Carter, in August, 1789, an undivided moiety of the original tract; and, it being important that a specific division should take place between them, one was made in June, 1790. It is not shewn, nor is there the least ground to believe, that any misrepresentation or deception was practised towards Charles Carter, in making it., He had a Jong and ampJe opportunity to know the quantity of tire land, and even to make a survey thereof. Garland's survey, by which they agreed to divide, being made as long ago as the year 1755, could not possibly have been made with a view to any deception in this particular j and if it had, Robert Carter might, in the division, have been himself injured as well as his adversary. But any such pretence is ridiculous. If the lots in Garland's survey have not held out, and, even if there was, in the year 1755, a 'design in making those lots appear larger than they really were, on account of the rents to be paid by the tenants, such error would run through the whole survey, and thus demolish the pretension that the other moiety (’Robert Carter's) may still hold out its purported quantity, or more* With respect to the partition, division, and allotment, made by Bushrod Washington and Charles Carter, the authority of the former, as attorney for Robert Carter, is admitted by Charles Carter in the instrument of division itself; and, besides, Bushrod Washington seals the paper, and annexes his character of “ Attorney for Robert Carter." This would seem to me, amply sufficient to make the division valid. In 9 Co. 77. a. Combes's case, it is held, that if A. “ as attorney of B." and shewing the letter of attorney, makes a surrender, or delivers seisin of a tract of Jand, it is sufficient. That seems analogous to the case before us. As to that instrument of partition, if the end and scope of f ones's bill had been for an undivided moiety of the tract of 11,375 acres, it might perhaps be doubted whether a copy of that paper, supported only by the oath of the defendant, would be competent to narrow the claim. But *197 uiich is not the end of the bill, as I have already endeavoured to shew. The. hill claims a specific tract of land, of which ihe appellants are already in possession, and therefore the exhibition of this paper to prove the very fact admitted by the claim in the bill, was unnecessary on the part oí the defendant. If this instrument of partition had not been shewn in evidence at all, the result would have been precisely the same on the shewing of the appellants. Bui, if this paper was necessary for the defence of Robert Carter, it does not rest upon his answer merely. It is supported by the coincidence of boundaries specified in if, and the bill and deed under which the appellants claim, by the entry of Charles Carter into the same land, and by Thornley, the appellant’s agent, surveying by the same boundaries.
I am, therefore, of opinion, as upon the present record, that even the representatives of Charles Carter would have no claim to the land in controversy; and, clearly, that the pr. s<‘iit appellants have not; and that, even if they had, the representatives of Charles Carter should be also before the Court, in order to defend their right, or set it up in derogation of the claim of the appellants. Upon the whole I am of opinion, that the decree of dismission be
AFFIRMED.
Judge Fleming.
In August, 1/89, the compromise took place between Robert Carter and Charles Carter, when the former conveyed to the latter, in consequence thereof, an undivided moiety of the Goose Creek tract of land, said to contain 11,3/5 acres, by deed bearing date the 14th day of August, 1789, as staled in the bill, and acknowledged by the answer, though the deed does not appear in the re cord. Previous to the 26th day of June, 1/90, a partition of the land was made by and between Charles Carter, of the one part, and Bushrod Washington, the agent of Robert Carter, on the other part, by metes and bounds, as appears by a deed without date, under the seals of the said Charles Carter and Bushrod Washington, a copy of which is stated *198 and referred to in the answer, and was read at the trial as one of the exhibits, and not excepted to; and therefore is a proper document in the cause, and ought to have the same effect as the deed itself would have had, if produced. The division was made with reference to a survey and plat of the whole tract made by William Garland, in the year 1755, and divided into a number of lots, from one to forty-five inclusive, making in the whole 11,764, instead of 11,375 acres, called for by the patent; which gave a surplus of 389 acres. On the division made by Mr. Washington and Charles Carter, it appears by Garland’s survey, that 5,551 acres were allotted tp Charles Carter, and the residue of 6,213 acres were retained for Robert Carter, making a difference in his favour of 662 acres, a moiety of which, taken from 6,213 acres reserved for Robert Carter, and added to 5,551 acres allotted to Charles Carter, would give to each party 5,882 acres; so that, by Garland’s survey, Robert Carter got, on the division, only 331 acres more than a moiety of the whole tract of 11,764 acres. Tn consequence of this division made by metes and bounds', previous to the 26th day of June, 1790, Charles Carter took possession of the part allotted to him, and acquiesced in the division, without any objection or murmur; and, in October, 1794, after a lapse of more than four years, sold to Mr. Jones, for the consideration of three dollars per acre, “ the Goose Creek tract of land, in “ the County of Loudoun, said to be a moiety of a tract “ granted to Robert Carter, by deed bearing date the 30th “ day of March, 1727, and to contain 11,375 acres.” And the land is described by lots numbex-ed in Garland’s sur-vey, and agreeing precisely with those mentioned in the deed of partition made by Charles Carter and Mr. Washington, on behalf of Robert Carter. After Mr. Jones’s pxxrchase, a resurvey was necessary, to ascertain the number of acres, to fix the amount of the purchase money, at three dollars per aci'e. A survey was accordingly made by Aaron Thornley, by which it appears, that, instead of 5,551 acres, according to Garland’s survey, those several *199 lots contained only 4,871 acres, leaving a deficiency of 680 acres. But supposing the lots retained for Robert Carter, to fall short of Garland’s survey in the same ratio, there would be a deficiency in his part of 761 acres; making the difference between the two lots still less than it appears by Garland’s survey, and shewing only 290 1-2 acres more than a moiety, were retained for Robert Carter. But, however that may be, it appears to me that Charles Carter was hound, as well at law as in equity, by the partition made by himself and Mr. Washington, by metes and bounds, of which he never complained to the day of his death; and that Mr. Jones, having purchased the specif c tract, (as appears by Charles Carter’s deed to him of December, 1794,) also described by metes and bounds, the partition was likewise binding on him : and he had (if any) still less cause of complaint than Carter; as he purchased by the acre, and was bound to pay for no more land than was comprised in his deed.
Upon the whole, I concur in the opinion, that the decree is correct, and ought to be affirmed; and that is the unanvffljous opinion of the Court»,

 Litt. sect. 250. Co. Litt 169. a.

 9 Co. 74.

 Litt. sect. 250. Co. Litt. 166. a. 169. a. Litt. sect. 255.

 Litt. sect. 256. Co. Litt. 170. b.

 Ib. sect. 258.

 Co. Litt. 171. a. b.

 Litt. sect. 290. Co. Litt. 187. Ib. sect. 318. Co. Litt. 198. b.

 Ambl. 250.

 l Fonb. 116 n. 1. Bro. Ch. Ca. 157.

 3 Hen. & Munf. p. 399.

 3 Call, 267.

 2 Wash. 276.